Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
for the

District of Massachusetts

| | | |
|---|---|---|
| Yuhua Shang | ) | Case No. |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | Jury Trial: *(check one)* ☑ Yes ☐ No |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| -v- | ) | |
| | ) | |
| | ) | |
| See attached | ) | |
| | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | ) | |
| *with the full list of names.)* | ) | |

## COMPLAINT FOR A CIVIL CASE

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Yuhua Shang    *PRO SE* |
| Street Address | 12 Trickett Rd. |
| City and County | Lynnfield |
| State and Zip Code | MA 01940 |
| Telephone Number | 5083608385 |
| E-mail Address | huafitz@gmail.com |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendants

#1 Howard Hughes Medical Institute (HHMI)

#2 Brandeis University

#3 Dr. Michael Rosbash Professor of Biology, HHMI and Brandeis University

#4 Dr. Leslie Claire Griffith Professor of Biology, Brandeis University,

Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

Defendant No. 1

| | |
|---|---|
| Name | Howard Hughes Medical Institute |
| Job or Title *(if known)* | |
| Street Address | 4000 Jones Bridge Road |
| City and County | Chevy Chase |
| State and Zip Code | MD 20815-6789 |
| Telephone Number | 301.215.8500 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Brandeis University |
| Job or Title *(if known)* | |
| Street Address | 415 South Street |
| City and County | Waltham |
| State and Zip Code | MA 02453 |
| Telephone Number | (781) 736-3500 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | Michael Rosbash |
| Job or Title *(if known)* | Professor of Biology |
| Street Address | Brandeis University Shapiro Science Center, Level 2 |
| City and County | Waltham |
| State and Zip Code | MA 02453 |
| Telephone Number | 781-736-3160 |
| E-mail Address *(if known)* | rosbash@brandeis.edu |

Defendant No. 4

| | |
|---|---|
| Name | Leslie Claire Griffith |
| Job or Title *(if known)* | Professor of Biology |
| Street Address | Brandeis UniversityShapiro Science Center, Level 2-06B |
| City and County | Waltham |
| State and Zip Code | MA, 02453 |
| Telephone Number | 781-736-3125 |
| E-mail Address *(if known)* | griffith@brandeis.edu |

Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question                    ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Employment-Based Discrimination *based on gender & family leave; The Civil Rights Act of 1964

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

   a.    If the plaintiff is an individual
         The plaintiff, *(name)*                                     , is a citizen of the
         State of *(name)*                                     .

   b.    If the plaintiff is a corporation
         The plaintiff, *(name)* _____ , is incorporated
         under the laws of the State of *(name)* _____ .
         and has its principal place of business in the State of *(name)*

         _____

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

   a.    If the defendant is an individual
         The defendant, *(name)*                                  , is a citizen of
         the State of *(name)*                          . Or is a citizen of
         *(foreign nation)*

Pro Se 1 (Rev 09/16) Complaint for a Civil Case

        b.     If the defendant is a corporation

            The defendant, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

            Or is incorporated under the laws of *(foreign nation)* _____. and has its principal place of business in *(name)* _____.

            *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

        3.     The Amount in Controversy

            The amount in controversy-the amount the plaintiff claims the defendant owes or the amount at stake-is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

**Please see the attached Statement of Claim**

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

**Please see the attached Relief**

Pro Se 1 (Rev 09/16) Complaint for a Civil Case

## V.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.  For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          05/18/2018

Signature of Plaintiff      *Yuhua Shang      PRO SE*

Printed Name of Plaintiff   **Yuhua Shang**

### B.  For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

Statement of Claims

**PLANTIFF:** Yuhua Shang 12 Tri ckett Rd. Lynnfield, MA 01940

**DEFENDANTS:**

#1 Howard Hughes Medical Institute (HHMI) 4000 Jones Bridge Road, Chevy Chase, MD 20815-

6789

#2 Brandeis University 415 South St, Waltham, MA 02453

#3 Dr. Michael Rosbash Professor of Biology, Brandeis University, HHMI, Brandeis University,

Shapiro Science Center, Level 2, MS008, Waltham, MA 02453

#4 Dr. Leslie Claire Griffith Professor of Biology, Brandeis University, Shapiro Science Center, Level

2-06B, MS008, Waltham, MA 02453

1. In or about March 2006 I began working as a research scientist in Dr. Michael Rosbash's lab
(defendant #3) at the Howard Hughes Medical Institute (HHMI, Defendant #1) located at
Brandeis University (Defendant #2).  Starting from 2010, my employment situation took a
dramatic downturn within weeks after I informed Defendant # 3 (Dr. Rosbash) that I was
pregnant with my first child and later after my 2nd pregnancy he informed me that he could not
consider me a serious scientist if I was going to be raising children. In just 2 years, I had to
work in two different labs (defendant #3 and #4), under 3 different research grants, and in two
different institutions (defendant #1 and #2). My science career eventually got completely
derailed after my 2nd maternity leave in 2012. Dr. Rosbash and Dr. Griffith's decision put me in
no chance to apply for academic position. Ultimately, it is HHMI and Brandeis University that
are responsible for protecting their employees' legal rights. Instead, HHMI even claimed that it
did not know much about my case in its sworn statement submitted to the MCAD. This kind of

1

negligent had caused traumatic impact on my career and my family and I am concerned that it has been repeated in our great Nation with others.

2. I filed a discrimination complaint with MCAD. Several self-contradictory and inconsistent statements were made by Dr. Rosbash and all other defendants in the ensuing proceedings. Please see blow.

- Both of my Post-Pregnancy transfer were explained by Dr. Rosbash as a "career enhancing" transfer instead of a demotion, which later led to the ending of my career. He and other defendants offered several reasons that are either contradictory with each other or with the facts.

- Dr. Rosbash told the MCAD that after I informed him about my 1st pregnancy, he suddenly either had funding issue, or I did not perform well, or I was too competent so, in his own words, he chose to support less competent male scientists for career advancement.

- Dr. Rosbash (and HHMI, defendant #1) even used a "career enhancing" lateral shift of employment, which was proposed and executed by Dr. Rosbash, as the evidence that I quit happily.

- Dr. Rosbash claimed I was let go due to funding issues, while continued hiring all male employees during this time frame. In his own words, they were less qualified or less published.

- After almost 4 years and numerous legal procedures & motions at the MCAD, Dr. Rosbash, finally admitted that the 1st post-pregnancy "career enhancing" transfer by him was indeed only meant to be a temporary position, which would eventually lead to the discontinuation of my science career track.

- While Dr. Rosbash and HHMI claimed they had funding issues, Dr. Rosbash was actively interviewing people for the HHMI position during that period; HHMI gave his lab $300,000 to

2

fund the equipment that I maintained. I was also the sole user in his lab and the HHMI for this equipment during that period of time.

- While Dr. Rosbash claimed he had funding issue, so he could not support my Brandeis University position, the record shows that he used that same grant money to support a scientist who did not even work on the project and of course, never took a maternity leave while working in his lab.

- While all of these defendants claimed they had funding issues, I was the only employee who lost her position post pregnancies. In these two labs, all comparable male co-workers or female co-workers who never requested maternity leave received full support and moved onto a higher academic position.

- At the time of each transfer, I was encouraged by Dr. Rosbash and later by Dr. Leslie Griffith (defendant #4) that my career was still on track and that they were in full support of me completing my research project and applying for a professorship. As a result, I accepted the employment changes. Instead, they both later ended my employment prematurely and my project was eventually given to two male employees, who did advance their science career, while mine ended after my 2nd maternity leave.

- Dr. Rosbash requested a private meeting with me and told me in person that he would not support me after my 2nd maternity leave. He later denied it and he had never been put on stand, under oath. We also never had the chance to hear from people who may have overheard the conversation or may have additional information regarding my employment status.

- Dr. Leslie Griffith claimed that she changed the direction of her research so she had to fire me. However, her research grant was exact the same as the previous one. She also continued my project for another year after she terminated my position and she transferred

3

my work to the other two male scientists so they both got promotion on this project while my career track got completely derailed.

- Dr. Griffith claimed that she ended my position because I did not have the skill that her "new" research direction required. However, the skill she needed had been the focus of my neuroscience career and it was a male scientist who lacked that skill. Ironically, she fully supported him until he moved onto a higher position.

- During the 2nd transfer, Dr. Griffith claimed that she took Dr. Rosbash's proposal and hired me because she wanted to help my career. However, she later informed that I probably would be fired– that was during the 2nd trimester in my 2nd pregnancy. My career ended right after my 2nd maternity leave. Her decision only benefited her own research career and Dr. Rosbash and never helped my career. Dr. Griffith became the leading author on my project, which was late published in a high-profile journal and Dr. Rosbash was able to distance himself from my case and later claimed that he was not responsible because Dr. Griffith's employment decision put him right outside the 300-day time.

- Ultimately, it was the two institutions, the HHMI and Brandeis University, that are responsible for Dr. Rosbash and Dr. Griffith's employment decisions. Both HHMI and Brandeis University had been negligent on my case. During this entire period, these two institutions never had a conversation regarding my employment situation. Even after I filed my case at the MCAD, HHMI still claimed that they knew very little about my case while paying the legal fees for Dr. Rosbash.

3. These are only a subset of many contradictory explanations, but none was ever reconciled during the MCAD investigation. There really seemed to be little investigation at all, just a series of ever changing explanations from two hired legal teams, and eventually a dismissal by MCAD. The attorney represented Brandies University used to be the general counsel at the MCAD and seemed very friendly and "chatty" with the MCAD staff.

4

4. A simple statement that I was let go as a bad employee who constantly broke the safety rules or equipment, or no talent in science, would have been fine. None of that ever occurred, nor was any consistent explanation ever given. As a matter of fact, in Dr. Rosbash's own words, male scientists who were unable to make exciting discoveries were fully supported. Male scientists who broke the safety rules were never let go. Dr. Rosbash fired 4 scientists during my employment on Brandeis campus and all were female. To my knowledge, before hiring me, Dr. Griffith never even supported a female scientist with pregnancy to advance to a higher position in academia.

5. I have worked almost 10 years as a neuroscientist and brain imaging with several publications in one of the best journals in the world. My goal was to make significant contribution to brain and sleep research. The adverse employment decisions made by the 4 defendants after my 1st and 2nd maternity leaves destroyed my chance to succeed in academia as a mother of two children. All my male co-workers in these two labs were able to secure career advancement and follow on employment.

6. Moreover, because my position was terminated prematurely, shortly after my 1st maternity leave, Defendant #3, Dr. Rosbash, has never fully paid me for the work I did during my unpaid maternity leave.

7. The adverse employment decisions were made during my two pregnancies while both defendants #3 and #4 requested that I must complete my current project, to "advance my career". Instead, my employment ended, and the four-year research project was given to two male employees, so they could be published and used it for their career advancement.

Timeline

8. In the Spring of 2010, during my second trimester, Dr. Michael Rosbash told me that he would terminate my position at HHMI (defendant #1) right after my 1st maternity leave. During my 1st maternity leave, I called Dr. Rosbash and asked if he would change his mind about my

employment status. Upon my request, Dr. Rosbash told me that I would get my position back, but he would transfer me to Brandeis University payroll (defendant #2). He informed me in writing that this new position would not only allow me to continue my sleep research, but also broaden my horizon and would make me more attractive in my job search.

9. None of the three defendants, Dr. Rosbash or HHMI or Brandeis University, ever informed me that this post-pregnancy position would be only 6-month, which was NOT compatible to my position prior to my 1st maternity leave. Dr. Rosbash's employment letter sounded very promising so I accepted this transfer without filing a law suit. Never reconciled.

10. Dr. Rosbash requested me to continue to work during my unpaid maternity leave in November 2010. Dr. Rosbash wrote that he would not pay me right away, but instead, he would spread the pay from January to July in 2011 after I started working as Brandeis employee. I agreed.

11. During the job transferring process, I was told to submit a resignation letter to HHMI so that I could start the new position as a Brandeis employee. I only submitted this letter to accept the new job, but both defendant #1 and #3 later used this resignation letter to mislead the MCAD investigator, by claiming that I voluntarily quit my job because I wanted to stay at home to care for my newborn. These false claims were written in their sworn statements submitted to the MCAD and are in sharp contrast with the timeline and the job offering email from Dr. Rosbash. Never reconciled.

12. Upon returning from my 1st maternity leave, I started working in Dr. Rosbash lab as a Brandeis employee in January 2011. This position only lasted six months. In or about April 2011, before my first child even turned 1, Dr. Rosbash officially informed me that my position in his lab would be terminated in June 2011. Since he terminated my position prematurely, I was not fully paid for the work I did during my maternity leave in November 2010.

13. Dr. Rosbash waited for almost 4 years to tell me that this post-pregnancy position was NEVER supposed to be comparable for my pre-pregnancy position. Instead, the defendant offered several contradictory explanations in sworn statements submitted to the MCAD:

6

a) First, he falsely claimed that I quit my science career happily so that I could stay at home to care for my infant.

b) Then, Dr. Rosbash claimed my work progress became an issue so he had to terminate my position prematurely. (I submitted evidence showing that these claims were false.)

c) He also claimed that he had funding issue. However, records showed that he replaced me with a scientist who was NOT even working in this field and did not request maternity leave.

d) Dr. Rosbash finally admitted that he never planned to offer me a comparable position after my 1st pregnancy. This sworn statement was submitted almost 4 years after my pre-pregnancy position was terminated, and therefore, the 1st time I was officially informed about the true nature of this employment change post-pregnancy was during the MCAD investigation.

e) Dr. Rosbash and his attorney used this to claim I had not filed my case within the allowed 300 days, even though the delay of the discovery was caused by Dr. Rosbash and case precedence was brought up that this 300-day clock starts when the employee is officially informed that she would not receive a comparable position post pregnancy.

14. During the appeal hearing at the MCAD in 2017, Dr. Rosbash's attorney, claimed that Dr. Rosbash only planned to hire me back for one year, which was inconsistent with the 6-month employment I received. Because Dr. Rosbash, HHMI, and their attorneys had made so many contradictory statements, even till this date, I still do not know the exact nature of the post-pregnancy position Dr. Rosbash offered me or on what legal ground did Dr. Rosbash terminate my position.

15. When Dr. Rosbash informed me about the termination of my post-pregnancy position from his lab, he also told me that he already made an arrangement so that I could start working under his longtime collaborator and close friend, Dr. Leslie Griffith (Defendant #4). Dr. Rosbash told me that he would continue supporting and mentoring me. He expressed, several times, that

7

this would be a great career move for me. I knew at the time that my research needed at least two years to complete, so I had a lengthy conversation with Dr. Griffith before I accepted the employment change. I told Dr. Griffith that 1 year in her lab would not be enough for my research, so I would NOT accept the transfer if that was all she could offer. Dr. Griffith promised me that she had enough grant to support me for at least two years and I would be able to take my project and apply for an assistant professor position. <u>I did not file a discrimination law suit against Dr. Rosbash and HHMI at the time of this 2nd transfer, because both Dr. Rosbash and Dr. Griffith had presented themselves as still supporting my career path and I did not know that they would later quickly terminate me and give my research project to male scientists.</u>

16. I started working in Dr. Griffith lab in July 2011. 4 months later, weeks after I informed both Dr. Rosbash and Dr. Griffith about my 2nd pregnancy, we had a meeting together and I was informed that my position at Griffith lab and Brandeis University would be terminated due to funding problem. She told me that she would talk to the Department manager about her funding situation and she might be able to offer my job back after my second maternity leave, so I waited. Once again, my second pregnancy was filled with uncertainty, distress, anxiety, and unpaid work as I continued to complete the four-year project.

17. I gave birth to my second child on April 30th, 2012 and I continued working from home during my 2nd pregnancy. In June 2012, Dr. Griffith officially informed me in writing that my position would be terminated after my 2nd maternity leave and she could only offer me a one-month extension so that I could wrap up and clean up my workspace. She also wrote that she would replace me with two male scientists to complete my project. As a result, they both got promoted onto my project.

18. This means that I was not able to enter the job market and my sleep research that I had worked on for over 6 years would come to an end before I could complete it. A one-month extension would not provide me any opportunity for my career advancement in academia. As

a result, I declined her temporary demotion offer and I filed the discrimination law suit a few month later at the MCAD. This has been a very negative experience. However, Dr. Griffith and Brandeis University used this as an "evidence" that I quit happily so that I could stay at home caring for my infant.

19. After my pre-pregnancy position was terminated by Dr. Griffith, Defendant #3, Dr. Rosbash requested a private meeting with me and told me in person that he could not support my science career in academia because he felt my interest in science started fading away after I had baby. He also told me in person that there was no evidence that one had to be the primary care giver to their child for the child to do well. He denied this conversation and was never questioned about it, under oath.

**Relief:**

I came to the United States in 1997 because I wanted to pursue research career. I had been working in highly specialized field. Due to the nature of my job, my research field, and my skills, I was unable to secure a comparable position without a current position in a research lab. I was using the state-of-art technique and equipment for my brain research and therefore, without a position in a highly rated lab in the field made it impossible for me to continue applying my skills to brain and sleep research. I had applied several positions but was unable to secure any. I did not even get any interview opportunities. During this period of time, I started noticing that there was a big gap in early brain development in early education, so I felt my knowledge in brain circuitry, learning, and development would make positive changes in early education. I started building an early learning program that focuses heavily on early brain building. This program took me several years to build and because I had to retrain myself with many new skills, I had no income for the past 6 years. While all my comparable male co-workers were able to complete their training and had advanced to high positions.

Therefore, I am asking the court to order a compensation that is comparable to my male co-workers, which I estimate at around $80,000/year x 6 years.

9

I also hope the court will issue $50,000 for emotional distress because the adverse employment decisions made by the defendants during my 1st and 2nd pregnancy caused lots of uncertainty, emotional distress and anxiety.

Finally, I'd like to ask the court to order HHMI and Brandeis University to take appropriate action and discipline against Dr. Michael Rosbash and Dr. Leslie Griffith. Ultimately, it is HHMI and Brandeis University that are responsible for protecting their employees' legal rights. Instead, HHMI even claimed that it did not know much about my case in its sworn statement submitted to the MCAD. This kind of negligent had caused traumatic impact on my career and my family and I am concerned the could be repeated with others.

I'd like to request trial by jury if possible. I decided to file this case at the federal court because I feel there is a need to address gender-based discrimination in higher education and science field. I have met many women who chose to not have children until they got their tenure positions in academia. I also have met many women who chose being a mother and gave up their science career. They either become a technician or they found a different job. Most female scientists I met, or I used to work with see a huge conflict between being a mother with infants and the success in academia. Dr. Griffith even told me in person that she was "lucky" because her husband was home, so she did not have to care for her infants. I believe this kind of biased mentality needs to be changed.

I am also writing to request an attorney.

10